DECISION AND JUDGMENT ENTRY
{¶ 1} David Crager ("Father"), appeals the Lawrence County Court of Common Pleas, Juvenile Division, adjudication granting permanent custody of his daughter, Leahanna Crager[1], to Lawrence County Job Family Services, Children Services Division ("LCCS"). Father argues that the trial court's judgment is against the manifest weight of the evidence. Specifically, Father contends that he was financially unable to obtain the counseling required by the case plan, and that his jail sentence and community service impeded his ability to obtain the counseling in a reasonable amount of time. Additionally, Father contends that the trial court erred in finding LCCS made reasonable efforts to reunite him with Leahanna, because LCCS failed to provide him with the required services free of charge, and failed to conduct a home study. Because the trial court is in the best position to determine the credibility of the witnesses, and the record contains some competent, credible evidence supporting the trial court's decision, we disagree. Accordingly, we overrule Father's sole assignment of error and affirm the decision of the trial court.
 I. {¶ 2} Leahanna Crager was born on January 12, 2000 to Jamie Crager ("Mother") and David Crager. On March 28, 2002, LCCS sought and obtained an ex parte order of custody because Leahanna was a neglected and dependent child. The trial court commenced an adjudicatory hearing on that date and proceeded to appoint counsel for Father and Mother, and a guardian ad litem for Leahanna. The hearing recessed to allow the parties to consult with counsel. When the adjudicatory hearing resumed on April 8, 2002, Father and Mother admitted to the amended complaint, which alleged that Leahanna was a dependent child. Accordingly, the trial court found Leahanna to be a dependent child.
 {¶ 3} On May 23, 2002, the trial court approved and entered an agreed case plan as its dispositional order. The case plan required Father and Mother to attend domestic violence counseling, anger management counseling, and parenting classes, and to obtain appropriate housing. It also required Father and Mother to obtain employment or some other appropriate means of obtaining income to support Leahanna. The case plan further provided Father and Mother with supervised visitation with Leahanna for one hour per week at the LCCS office.
 {¶ 4} The record reflects that shortly after the court adopted the case plan, Father was incarcerated in the Lawrence County Jail, and that he was not released until August 27, 2002. On February 13, 2003, LCCS filed a motion requesting permanent custody of Leahanna, wherein the agency cited the parents' lack of progress in completing the case plan. Specifically, LCCS noted that Mother attended her initial counseling assessment and cancelled all her other appointments, while Father did not even attend the initial assessment. LCCS also noted that both parents regularly missed scheduled visitation with Leahanna during the ten months that LCCS had temporary custody.
 {¶ 5} The trial court heard LCCS's motion for permanent custody on April 7, 2003. Notably both Father and Mother were forty minutes late for the hearing. The trial court heard the testimony of Randy M. Thompson and Taneka Ferguson, LCCS investigators, Father, and Mother. On April 18, 2003, the trial court issued a judgment entry, wherein the trial court found by clear and convincing evidence that Leahanna was a dependent child that could not be placed with either of her parents within a reasonable time and should not be placed with either parent. The trial court found the parents failed to substantially comply with the case plan for reunification within a reasonable time and demonstrated a lack of commitment toward the child by failing to regularly visit when able to do so, and by other actions showing an unwillingness to provide an adequate permanent home for the child. The trial court further found that permanent custody is in Leahanna's best interest. Accordingly, the trial court granted permanent custody to LCCS.
 {¶ 6} Father timely appealed raising one assignment of error: "The trial court erred in granting the Lawrence County Childrens (sic) Services' motion for permanent custody, as it was against the manifest weight of the evidence."
 II. {¶ 7} In order to grant permanent custody to a children services agency, a court must determine that permanent custody is in the best interest of the child pursuant to R.C. 2151.414(D), and that the child cannot be placed with either of her parents within a reasonable time for at least one of the reasons enumerated in R.C. 2151.414(E). Here, the trial court found that the parents failed to substantially comply with the case plan for reunification within a reasonable period of time. Additionally, the trial court found, pursuant to R.C. 2151.414(E)(4) that Father and Mother demonstrated a lack of commitment toward the child by failing to regularly visit when able to do so and by other actions showing an unwillingness to provide an adequate permanent home for the child. Father does not challenge the trial court's finding that it is in Leahanna's best interest to grant permanent custody to LCCS, but asserts that Leahanna could be placed with him within a reasonable time.
 {¶ 8} An award of permanent custody must be supported by clear and convincing evidence. In re Hiatt (1993), 86 Ohio App.3d 716, 725. The Ohio Supreme Court has defined "clear and convincing evidence" as "[t]he measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal." Inre Estate of Haynes (1986), 25 Ohio St.3d 101, 103-04.
 {¶ 9} A reviewing court will not reverse an order terminating parental rights if it finds, upon reviewing the record, that the record contains sufficient evidence to satisfy the clear and convincing standard. In re Baby Girl Doe, 149 Ohio App.3d 717, 738, 2002-Ohio-4470, ¶ 89; In re Wise (1994), 96 Ohio App.3d 619, 626. If there is some competent, credible evidence going to all the essential elements of the case, we will not reverse the trial court's judgment. State v. Schiebel
(1990), 55 Ohio St.3d 71, 74. We will not substitute our judgment for that of the trial court when there is some competent, credible evidence supporting the trial court's findings and decision. Id. Issues regarding the credibility of witnesses and the weight to be given to the evidence are primarily for the trier of fact. We give deference to the trial court as the trier of fact because it is "best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony."Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80.
 III. {¶ 10} Father's sole assignment of error is that the trial court's grant of permanent custody to LCCS was against the manifest weight of the evidence. Father argues that LCCS failed to produce clear and convincing evidence to support its motion for permanent custody, and that the trial court failed to consider certain evidence of numerous obstacles that Father claims prevented him from completing his case plan in a timely fashion.
 {¶ 11} The parties do not dispute that Father failed to complete the counseling and parenting classes required by the case plan. While LCCS contends that Father's failure to complete the case plan requirements is indicative of his lack of commitment to Leahanna, Father argues that his failure is due to financial hardship and inadequate time to complete the requirements due to his incarceration and community service obligations.
 {¶ 12} Father argues that he did not complete the required counseling because he could not afford it. LCCS investigator Taneka Ferguson testified that she investigated counseling services for Father. She indicated the counseling agency had a sliding fee scale, setting the fee for services based upon the individual's household income. Ms. Ferguson testified that due to the family's household income, namely Mother's SSI benefits of approximately $545 per month, Father would have to pay $10 per session for his counseling and parenting classes.
 {¶ 13} Father claims that the $10 per session fee for his counseling sessions presented an extraordinary obstacle to the completion of his case plan for reunification with Leahanna. Father testified that he and Mother paid $375 per month rent, including utilities. He testified that he attempted to find work, but could only name four businesses where he submitted applications during the seven months after his release from jail. Father did admit that he shoveled snow, earning $20 or $30 on several occasions. Father did not testify as to how he spent that money. However, the fact that he did not attend a single counseling session or parenting class could reasonably lead the trial court to conclude that he chose to spend that money on something other than preserving his relationship with his daughter.
 {¶ 14} Upon cross-examination, Father testified that he enjoyed playing pool with his friends. Father estimated that in the year before the final hearing, he played more than 100 games of pool, at fifty cents per game. When asked if he ever considered the fact that the money he used to play pool could have gone toward his counseling, Father replied, "I've never really thought about it."
 {¶ 15} On direct examination, Father attempted to minimize the extent and cost of his pool playing by claiming that friends paid for him to play, or that the owner would let him and his friends play free. Mother also testified that friends would pay for Father to play. However, she also testified "Maybe he might have fifty cents on him every once in a while. Maybe a dollar or two, maybe a little more." Mother testified it upset her that Father spent money on anything other than counseling, but then attempted to minimize the impact of Father's spending by stating that fifty cents or a dollar would not go very far toward his counseling sessions.
 {¶ 16} In addition to the alleged financial hardship, Father argues that the completion of a ninety-day jail sentence, community service, and payment of court fines hindered his ability to complete the required counseling. The record reflects that Father was in jail from approximately May 27, 2002 to August 27, 2002. Thus, from the date of his release to the date of the permanent custody hearing, he had approximately seven months to commence his counseling and parenting sessions. Father testified that, as of April 7, 2003, he had served approximately twenty days of community service and had approximately five more days before his sentence was complete. At most, the community service impeded Father's ability to attend counseling sessions only one month of the seven months following Father's release from jail.
 {¶ 17} Father also alleges that he was unable to pay for the required counseling because he was paying court fines. We note that the only evidence of such fines in the record is Father's vague testimony that he had been ordered to pay court costs, and that he was paying them to stay out of jail. The record contains no other evidence regarding the existence, amount, or payment history of these alleged court costs. As the guardian ad litem noted in his brief, Father made no showing that he applied to the Ironton Municipal Court to seek relief from either the court costs or community service in order to comply with the LCCS case plan.
 {¶ 18} It is well settled that matters as to credibility of evidence are for the trier of fact to decide. State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus. Here, the validity of Father's arguments turns upon the credibility of his testimony. Based upon the foregoing, the trial court could reasonably conclude that while paying for his counseling may have caused Father some financial hardship, Father had the means to pay for at least some, if not all, of the required counseling but chose not to do so. The trial court could also reasonably conclude that Father's failure to complete any of the required counseling demonstrated a lack of commitment to the child. Despite all of Father's excuses for his failure to complete the required counseling, we note that when questioned about his anger problem, Father testified, "I don't think I have an anger problem." When asked if he felt the counseling required by the case plan was necessary, Father responded, "No. I don't feel that I need it." Therefore, the record contained some competent, credible evidence for the trial court to conclude that the true reason for Father's failure to comply with the case plan was his belief that he did not need counseling, rather than the alleged financial and time constraints.
 {¶ 19} Additionally, the record reflects that Father only attended approximately fifty percent of his scheduled visitation with Leahanna, attending, at most, twenty-two of forty scheduled visits. Father argues that LCCS cancelled four sessions. However, the record reflects that when Leahanna had lice, LCCS informed Father and Mother that they could exercise their next scheduled visitation if they obtained a written statement from the county health department stating their hair was free of nits and lice. While Father could have taken action that would allow him to continue exercising regular visitation, the record reflects that he chose not to see his daughter for four consecutive weeks.
 {¶ 20} Father also claims that severe winter weather prevented him from exercising some of his scheduled visitation with Leahanna. However, the record clearly reflects that during the course of this litigation, Father never lived more than ten blocks from the LCCS offices where he exercised his visitation. There is no evidence in the record tending to demonstrate that Father is disabled, or otherwise incapable of walking such a distance.
 {¶ 21} Finally, the record reflects that Father and Mother arranged an extra visitation session, to occur on January 10, 2003, to celebrate Leahanna's birthday. Despite the fact that the parents told Leahanna they would be there with her grandmothers, cake and gifts, neither Father nor Mother bothered to show up for this special birthday visitation. Based upon the foregoing, the record contained ample competent, credible evidence to support the trial court's conclusion that Father demonstrated a lack of commitment to the child.
 IV. {¶ 22} In determining whether the agency made reasonable efforts to reunify the child with her parents, the issue is not whether the agency could have done more, but whether it did enough to satisfy the reasonableness standard under the statute. In re Hughley (Oct. 26, 2000), Cuyahoga App. No. 77052, citing In the Matter of Tirado (Jan. 22, 1998), Mahoning App. No. 97 CA 26; In the Matter of Deanna Brewer (Feb. 12, 1996), Belmont App. No. 94-B-28. "Reasonable efforts" does not mean all available efforts. Otherwise, there would always be an argument that one more additional service, no matter how remote, may have made reunification possible. In re Fast (Mar. 25, 1992), Summit App. No. 15282.
 {¶ 23} In support of his proposition that LCCS did not make reasonable efforts to reunify him with Leahanna, Father alleges that the agency failed to obtain free counseling for him, and that the agency failed to complete a home study of his new residence. We disagree with Father's assertion that LCCS's failure to do these things constitutes a lack of reasonable efforts to reunite Father and Leahanna.
 {¶ 24} We note that the record reflects LCCS made efforts to locate low cost and/or free counseling for Father. LCCS succeeded in locating counseling with a sliding fee based upon Father's household income. Further, when Father complained about the cost of counseling, LCCS made additional, albeit unsuccessful, inquiries in an effort to obtain free counseling for Father. Based upon the evidence contained in the record and previously discussed in this opinion, we find that the trial court reasonably concluded that LCCS did exercise reasonable efforts to reunify Father and Leahanna despite LCCS's inability to obtain free counseling for Father.
 {¶ 25} Father's allegation that LCCS failed to exercise reasonable efforts in that LCCS failed to conduct a home study once he obtained housing also fails. The LCCS investigator testified that LCCS would not even consider allowing visitation in Father's home until he demonstrated compliance with the counseling and parenting requirements of the case plan. The record reflects Father failed to complete any of the counseling and parenting education requirements of the case plan. These elements of the case plan were essential to ensure Leahanna's safety and well being. Therefore, the LCCS and the trial court could reasonably conclude that the condition and suitability of Father's home was of little consequence until he made at least a minimal showing that Leahanna would be safe with him.
 {¶ 26} In conclusion, we find that the record contained some competent, credible evidence to support the trial court's finding that Father has demonstrated a lack of commitment toward Leahanna by failing to regularly visit when able to do so, and by other actions showing an unwillingness to provide an adequate permanent home for the child. We also find that the record contains some competent, credible evidence to support the trial court's conclusion that LCCS exercised reasonable efforts to reunify Father and Leahanna. Accordingly, we overrule Father's sole assignment of error and affirm the judgment of the trial court.
JUDGMENT AFFIRMED.
Evans, P.J.: Concurs in Judgment and Opinion.
Harsha, J.: Concurs in Judgment Only.
[1] Although all of the court records indicate that the minor child's name is Lehanna, the permanent custody hearing transcript at p. 58 reflects that her name is properly spelled Leahanna.